Thank you. May it please the court. My name is Nina Rabin and I'm appearing on behalf of the petitioner Maria Lorena Gomez Lopez. I'd like to reserve five of my 15 minutes for rebuttal. Your honors certain facts in this case are undisputed, namely the bookends of a sequence of events that led to my client's flight from Honduras. On the one end, we all agree that her problems began when she was kidnapped at the age of 16 And in his own words, her abuser Santos kidnapped her to be his woman, brutally raped and abused her for three months and held her in captivity until she finally managed to flee to the capital. And there she learned she was pregnant. Just a minute, counselor. Just I think we kind of understand the facts here. We're really talking about. Are you really wanting to talk about past persecution? Or are you talking about the future fear of future persecution that you want to address? So your honor, I do believe that she has established past persecution. Well, let's let's talk about that then. It's my understanding that the BIA found she was a not a member of a particular social group. Correct. And she had two social groups. Yes. So the fact is that she was not a member of the group, not that she was persecuted because she was in that group. Would you agree with me? Exactly. Yes. So. So if we look at that, she was not a member of the group. How does one who is kidnapped? Then become subject to domestic violence. It doesn't seem to me that if you're kidnapped. You're not in domestic violence, domestic relationship, you are kidnapped. So that there are different types of kidnapping, but I would say that this is a type of kidnapping that is inextricable from a domestic relationship. Well, just a minute, just a minute. When we look at kidnapping as it is. It seems as if that would not be in a domestic relationship with that would be a victim of a heinous crime, which is exactly what the BIA suggested. She was kidnapped as a child. She had no relationship to the kidnapper. And I guess I'm trying to figure out how in the devil that could be a woman in a domestic relationship. So sadly, many domestic relationships are non consensual. And the fact that she did not want to be in this relationship did not mean that she was not in a domestic relationship. If you think But are we on substantial evidence review here? And if we're talking about kidnapping, it seems to me that there is substantial evidence to sustain the BIA's decision that they were not in a domestic relationship because they were a victim of a heinous crime. There are heinous crimes that are also crimes of domestic violence. And this is one of them. So I think you argue. Did you argue before the BIA that kidnapping was a domestic violence? Yes, we've argued all around. So it didn't seem to me you even argued that before the BIA. Yes, our argument is that this was a domestic relationship, whether or not it was consensual. And that's in our brief to the board as well, that this misunderstood the circumstances of the kidnapping and time and captivity to construe that as not being a domestic relationship. And, you know, you could think about if he had some other criminal motive, for example, if he was going to hold her for ransom or try to have her as a hostage for something, that might be a crime that was unrelated to domestic relations. But from the very start, his motive in kidnapping her was to make her his wife, his woman. I understand that's your argument. Yes. But I don't know why the BIA's argument is not equally applicable here. You have one idea, they have another. And I looked at the affidavit of Hermann Doffer. I don't know how you say her name exactly. But that doesn't suggest that a kidnapping is included in a domestic relationship. In fact, we did have expert evidence about the lack of autonomy or consent for many domestic relationships in Honduras. And in the record, the petitioner relates that her mother, her. But just a minute, but just a minute, just a minute. As I looked at the evidence, your best, your best evidence, I guess, was this expert, Claudia H., I'll just say H. She doesn't suggest that kidnapping is included in a domestic relationship. Like I say, even if you think there I wouldn't say that kidnapping can be separated. But even if there's something about rise to the level or would not be part of domestic relationship, once she's in captivity for those three months and he was calling her his woman. But just a minute, if she's kidnapped, what he calls her or what he doesn't call her has nothing to do with it. But if she's kidnapped, I mean, once one's kidnapped, what the kidnapper calls you doesn't make you all of a sudden something different. That suggests that everybody who's kidnapped and if the guy suggests that it's my sister, all of a sudden she becomes my sister. Come on. The issue is that many women in Honduras are in non-consensual relationships. And if they are somehow exempt from the coverage of domestic violence laws because the relationship was right. Excuse me, Judge Smith, if I can interpose a question. I'm sorry. I didn't know you wanted to. That's the problem with video. You either have to hold your hand or do something. Counsel, your client was found credible by the agency, correct? That's correct. It's a curious set of facts that you have to struggle with. You know, as lawyers, you don't always get the perfect facts. And there's an element to the facts that suggest something like Stockholm syndrome. She kept going back to this guy, even when he wasn't kidnapping her, right? That is correct. To an extent. I think there were periods after that where she wasn't going back. He was relentlessly tracking her down and threatening her. There was a period in 2014 when he and his family manipulated her and their child into deciding to move in with the in-laws. We discussed that in our brief to the board more than in the brief to the Ninth Circuit, because the voluntary nature of it is something that the board didn't actually discuss, but the IJ did in her decision. And we have expert evidence about the cycle of domestic violence, the nature of power and control that abusers use, where there is this cycle of leaving and coming back. That's part of what we're seeing here. What does the record tell us about reporting of this series of events to local law enforcement? I think that because the board did not base its reasoning on... It's a simple question, counsel. Okay. So she did report the abuse by her brother-in-law. Other than that, she did not go to the police. So this relationship with her kidnapper, from the record, can we say that those events were never reported to local law enforcement? Well, her mother did contact the police, so she didn't, but her mother did when she was missing. Yes. Yes. Were local law enforcement authorities ever made aware of her kidnapping situation? Through the mother's report. But then what you see, and this speaks to Judge Smith's concern, that immediately once people see her in this domestic relationship with her abuser, they related to her as his wife. So even her mother and her own relatives referred to her as his wife after she was initially reported as missing. So I think that that speaks to the point that the society accepted her in a domestic relationship, even though it was initiated in this non-consensual way. Can you point to something in the record that shows any of the kidnapping events were reported by her to local law enforcement who refused to intervene? No. She never reported. Thank you. Thank you. I'd like to reserve the remainder of my time for rebuttal. Thank you. Mr. Minnick? Good morning, Your Honor. Good morning. May it please the court, William Minnick representing the respondent. Petitioner was never in a domestic relationship with Santos. She was the unfortunate victim of a crime. She then lived for 12 years unharmed and with no in-person contact with him. She then voluntarily lived at his mother's house. And finally, she was in the house with him for seven days and then she left. For these reasons, she was never in a domestic relationship with him. Substantial evidence supports the board's determination that the... Let's move to subjective fear of persecution. Where does the BIA address whether the petitioner had a subjective fear of persecution? I don't think that was the basis for the board's decision. The board's... The basis for the board's decision was that she was not a member of her particular social group. Well, but that's for past persecution. But when we get to fear of future persecution, the board has to determine whether she subjectively fears persecution and whether fear is objectively reasonable. I didn't find the board to do either of those. That's correct, Your Honor. The board denied her claim. In fact, the only thing the board did was say that it was all founded on an ability to relocate. Right? That's correct, Your Honor. That was the basis of the board's decision. How do I get around Rodriguez-Rivera, which says the BIA has to focus on the types of threats about which an alien testifies and determine whether the individual making the threats has the will or ability to carry out the threat? How do I get by that? The BIA didn't even look at the threats. All they said was there's an ability to relocate without looking at whether there was. It did base a decision on the ability to relocate. And the regulation says that if the applicant must demonstrate that she cannot avoid future persecution by relocating. I understand that. Can I ask a question about the regulation? The regulation says an applicant does not have a well-founded fear of persecution if the applicant could avoid persecution. Is there a difference between avoiding persecution and having a well-founded fear of persecution? Well, I think the regulation says that if she could avoid it, then she does not have a well-founded fear. In other words, her ability to avoid it by relocating is dispositive of the issue of a well-founded fear. Was she able to avoid persecution? Because some of the cases that Judge Smith's relying on, it is true that they suggest that threats, whether or not they could carry it out, can support a well-founded fear of persecution. But are they persecution in and of themselves? Well, I mean, under the regulation, if she can avoid the persecution, then she does not have a well-founded fear. And here she avoided persecution for a 12-year period. Well, that's my question. Did she avoid persecution? Because even during that 12-year period, she was not being abused. She was not being raped as she previously had been. But she was still being stalked. She was still being found out. To me, that definitely leads to perhaps a well-founded fear of future persecution. But is there any case law that suggests that that's not persecution in and of itself? Well, I'm not aware of any case, Your Honor. But during that 12-year period, she avoided any harm. She avoided in-person contact with him. And she was out living her life. She went back to school. She had jobs. She had significant relationships with two men. She was not in hiding during that time, except for a period of months in 2003. But Santos did threaten to kill one of her partners, correct? During that period of time, wasn't it? He claimed that he had killed one of her partners. She's deemed credible, counsel. She's deemed credible. So that means we treat her description that he either tried to kill her boyfriend at the time or threatened to kill him, correct? She's deemed credible, but Santos is not deemed credible. All she testified to was that he made that claim. He's not deemed credible by the court. There's no corroboration that his claim was actually correct. Okay, but let's assume that it is. My question is more fundamental. Is that persecution or is that just a fear of future persecution? Well, I mean, the board didn't address that. You mean, is your honor referring to the fact that- Well, my question is during that 12-year period, your position is she wasn't persecuted. But it seems to me she had a fear of future persecution. Would you agree with that? I mean, I know the BIA didn't address it, but would you agree that she had a fear of future persecution even during that 12-year period? I think subjectively she had a fear of future persecution, but under the regulation, she does not have a fear of future persecution if she can avoid persecution by relocating. So by operation of the regulation, she did not prove a well-founded fear of persecution to be is that you're making up the arguments the BIA needed to make. I mean, at this point, they had to establish that she had a subjective fear or not, and that her fear was objectionably reasonable or not, and they didn't. They didn't ever get to that. All they did was say, well, based on the regulation, we're going to found that she can have an ability to relocate. But the problem comes on in trying to determine whether there's ability to relocate, one has to concentrate on the threats which were given to her and the things that happened to her and what they should do and whether they really can relocate. Nobody assessed the murder of Yefri. Nobody assessed the effort to track and harm her. In fact, he seemed to be aware of where she was all the time. Nobody looked at those kind of things. Nobody looked at the fact that there were threats on the telephone calls, and the fact they were not carried out doesn't make them unreasonable. Nobody looks at that. And yet they jumped to the conclusion she can relocate. Seems to me we can't give credence to that under the regulation. Your Honor, the board did address that 12-year period of time on administrative record at three, which is the first page of the decision. On the last paragraph on that page, the board addressed that 12-year period in relating the facts, and its relocation determination encompasses its earlier discussion of that 12-year period. The board said that she had demonstrated the ability to relocate, and it necessarily encompasses its earlier discussion. And the board did address the issue of Santos's claim that he had murdered Yefri in a footnote in administrative record at four. The board correctly stated that his claim was uncorroborated. There's a death certificate in the record. It's record of 599, but it lists no cause of death. So the board did address that 12-year period in which she was not harmed and had no in-person contact with him, and determined that it demonstrated her ability to relocate to avoid future persecution. Well, I guess I'm still kind of grappling with, I mean, Judge Smith asked the question of, you know, did the board address all of these specific examples and take them into account? Does the board need to address those, or does the board just need to find, you know, one piece of, I mean, for us reviewing on substantial evidence, don't we just have to say that the complaint conclusion that she could safely relocate within Honduras is supported by substantial evidence? So if any evidence supports the board's conclusion that she could safely relocate, is our job to affirm at that point, or to deny the claim? Yes, your honor, that is correct. And the board did highlight portions of the record on which it based this decision. Again, administrative record at acknowledge the intervals of threatening phone calls, but it also said that they did not have in-person contact for many years. She returned to school. She had two other relationships. So the board did highlight evidence that was the basis for his decision, and because substantial evidence supports the board's conclusion, the court should deny the petition. Okay, so then I still struggle with, are the examples that I think Judge Smith aptly highlighted, are those bases for fear of future persecution, or can they be persecution itself? And if the board did not address that specific question, then do we need to remand for them to consider that? Because, I mean, I think that they clearly are bases for fear of future persecution, but why isn't it persecution in and of itself to call someone and say that you killed their partner? Isn't that persecution, and just not a fear of future persecution? I mean, the relevant, your honor, the relevant consideration is if she could avoid persecution by relocating. I understand that, but she was not able to avoid, so she was able to avoid, and this gets back to what the definition of persecution is. If she was able to avoid persecution, you're right, but she didn't avoid all contact with him for 12 years. She avoided the sexual abuse. She avoided the kidnapping, but the things that she was subject to in those 12 years, that's what I'm trying to drill down on, is whether those are examples of persecution, or just fear of future persecution. I think with regard to the threatening phone calls, since the board acknowledged that. That that was persecution. Well, no, that that was not persecution because the board acknowledged that she was subjected to phone calls during that 12-year period, but it said she had, but it said she had demonstrated its ability to relocate or to avoid that by relocating, so that sentence necessarily presumes that the board considered the phone calls were not persecution. Okay. Anything else, counsel? No, your honor, we'd ask the court to deny the position for review. Are there any other questions from the panel? It doesn't look like it. Thank you, Mr. Minnick. Thank you, your honor. So, if I may respond to the questions about whether the events in the 12 years amounted to persecution, I would refer the court to the citations and discussion in our brief on pages 35 to 37, and particularly the case Ruano, which talks about death threats and the fact that threats in combination with a history of physical assaults and violence can reach the level of persecution, and I think that's very much what's happening here during these years of tracking her down, issuing these threats. They are, they rise to the level of persecution because of what she knows about what he's capable of, and she knows that because of this experience before when they were together, and I think this speaks to Judge Smith's question about whether we're arguing past persecution, even if you set aside those initial three months when he kidnapped her. I think we still are arguing past persecution because she establishes membership in a particular social group. She's unable to leave a domestic relationship during those 12 years. There, they, it does have all the hallmarks of a domestic relationship. He's referring to her. If you're going to go on to the domestic relationship, BIA says she's not in the social group because she was able to escape, live separately from Santos for 12 years, return to school, and enter into other relationships. What case is there that says just because one is that she's unable to leave the relation? I think that the fact that she was trying to establish a life. Oh, no, I don't want, I don't want your facts. Is there a case? I'll look for one because I'm now looking at substantial evidence for the BIA, and they say she wasn't in the or the persecution. They're saying even if she were persecuted, she wasn't in the social group. And here's what they're saying because she was able to escape, live separately for 12 years, return to school, enter into other relationships. So I look for a case that says just because one is continually threatened when they're able to, does that mean that they're unable to leave the relationship? And I couldn't find one. And so therefore, if I'm on substantial evidence review, I'm having a tough time seeing why then she's a member of this particular social group. Well, I think that the unable to leave the relationship, if you look at the government itself has taken the position in its brief in matter of LR, which was in our record, that being unable to leave is not just an analysis of whether you are physically living together. It's an analysis of all of the ways that society is pressuring her to be that she is unable to live an independent life. I also think on the substantial evidence review, our brief sites to numerous cases where the key issue here is the board's failure to engage with critical facts. And as you noted, this fact of his boasting that he killed her domestic partner, the facts of the numerous times that he tracked her down and issued these threats and actually came back to Honduras looking for her. These are nowhere in the board decision. And well, that definitely that definitely goes to future persecution. That's why I emphasize those. The thing that I'm trying to do, you've got to establish past persecution or a fear of future persecution. I frankly, based on my questioning, I was trying to have the government see why you didn't make it on the fear of future persecution. But on the past persecution, when we're looking only at one social, whether she's in one of these social groups, then I look at their reasoning. And that's why I ask you the question. So that's why I focus on kidnapping, focus on kidnapping. And I would also focus on the abuse. I mean, she left immediately. She fought, sought refuge with no contact with her in person from December 2015, through February 2017. When she came to the United States, again, on a substantial evidence review, I'm having a tough time. How one can put her in one of those social groups. Yeah, I would refer you to our 28 J letter in Akasung about the nature of the time and whether she was basically unable to live a sustainable life that would show that her ability to, if you're talking about the future looking internal relocation, she wouldn't be able to do that on the facts of what her life was like during the preceding 12 years. Thank you. Thank you, counsel. And particularly appreciate your efforts as pro bono counsel. We will submit that case and we'll move on to the next argument in United States versus Hudson case number 19-10227.
judges: Hawkins, N.R. Smith, Nelson